## Case No. 2,068.

### BRYANT v. HUNTER et al.

[3 Wash. C. C. 48.] [1]

Circuit Court, D. Pennsylvania. April Term, 1811.[2]

MARRIAGE SETTLEMENTS—WILLS — CONSTRUCTION —PAYMENT — MARSHALING ASSETS — STARE DECISIS.

1. Construction of a bond given before marriage to trustees, in the nature of a marriage settlement; and of the will of the obligor, devising real estate to his wife, which was held to be an execution of the stipulations in the bond.

2. It is a general rule, that a devise of land, is not a satisfaction, or part performance of an agreement to pay money.

3. There is no principle of law, which will subject the real estate of the creditor, in the

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[2] [Reversed in Hunter v. Bryant, 2 Wheat. (15 U. S.) 32.]

hands of his devisee or heir, to satisfy the representatives of the personal estate of the same creditor.

[See note at end of case.]

4. A judgment at law, in the circuit court of the United States, of Kentucky, is not conclusive on the circuit court of another state, sitting in equity, as the same would not be conclusive on the circuit court of Kentucky; as the principles and rules of a court of equity, differ from those which prevail in a court of law.

[In equity. Bill by Thomas Y. Bryant, individually and as administrator of Margaret Hare, against George Hunter, William Hunter, and Thomas Todd, for an accounting and the application of certain of the estate of A. Hare to the satisfaction of a marriage article bond made by said Hare to Margaret Hare, in the nature of a marriage settlement.]

The bill states, that on the 10th of November, 1789, Andrew Hare, of New-Orleans, gave his bond to the defendants, George and William Hunter, in the penalty of 10,000 dollars, with condition, to secure to the use of Margaret Hare, his intended wife, 5,000 dollars, to be paid to her, in case of her surviving him, and 300 dollars a year to be paid to her, during their joint lives. The bond recites the intended marriage, and the promise of Hare to secure to said Margaret Bryant a competent support, as well during the marriage as after his death, in case she should survive him, and to their children, if any, in case he should survive her; and that he had agreed, that 5000 dollars, part of the estate whereof he was possessed and the interest thereof annually accruing, should be vested in trustees, for the sole and separate use of said Margaret Bryant, or the child, or children of her body; he covenants that he would, within the term of his life, or a year after the marriage, whichever should first expire, convey to the said trustees, or the survivor of them, some good estate, real or personal, sufficient to secure the payment of 300 dollars annually, on the 10th of November, for the sole and separate use of said Margaret Bryant, during the marriage; and also, sufficient to secure the payment of 5,000 Mexican dollars, for her sole use in case she should survive him, to be paid to the trustees within six months after his death; and in case of her death before him, then to be paid to the trustees, for the use of the child or children of the marriage; or if the said A. Hare should die before his said wife, and by his last will, should, within the said year from the date of the bond, give to her such estates, legacies, bequests, and provisions, as should be fully adequate to the provisions hereby intended to be made for her and her children; then, and in either of the said cases, the obligation to be void. That the marriage took effect. A. Hare died in 1799, leaving a will; whereby he devised to his said wife, his silver plate and household furniture. To John Hare, his only child, and his heirs, a tract of land in the Natchez district, containing 1000 acres. To his wife and son, and to such other children as he might have by his said wife, a tract of 10,000 acres in Kentucky, one-half to his wife, in fee, and the other to his son, and to such other children as he might have, in fee, to be equally divided, &c.; and if no other children, then the whole of said moiety to his said son; and in case of his and their death, before twenty-one, then, the whole 10,000 acres to his wife, in fee. The residue of his estate, real and personal, he gives in the same manner, in moieties, to his wife and child or children, by her, in every respect like the devise of the 10,000 acres; and if he has no child to live to twenty-one, then, the whole of said residue to his wife, in fee; and appoints his wife, Thomas Todd, the plaintiff, and George Hunter, his executors. That the widow and the plaintiff, renounced the executorship, and Todd qualified. In February, 1801, Margaret Hare, the widow, made a nuncupative will, by which she directed that all the property, of every kind vested in her by the will of her husband, or otherwise, should be divided between her nephew, Thomas Y. Bryant, (the plaintiff,) and her son John, allowing John the largest portion—her plate to John. In case either Thomas or John should die, the estate now vested to devolve to the surviving heir. This will was duly proved and recorded in the state of Kentucky, where it was made. That after the death of Margaret Hare, letters of administration, cum testamento, &c., on her estate, were granted to the complainant. That in February, 1801, an action of covenant was brought in a court of Kentucky, by George and William Hunter, on the above bond of A. Hare, against Todd, his executor; who pleaded the provision made by A. Hare, by his will, as full satisfaction of the provisions to be made by the bond; and that Margaret Hare never refused to abide by the said will. To this plea there was a demurrer, which was sustained; and on a writ of inquiry, the jury found £2647. 10s. damages, but by agreement, the same was not to bind Todd, farther than he had assets.

That on the 25th of September 1801, the plaintiff, as well in his own right, as administrator of Margaret Hare, filed a bill in the court of chancery of Kentucky, against Todd and the Hunters, praying that the former might be enjoined from paying the money so recovered, to the latter, and that the same might be decreed to be paid to him. That Todd, by his answer to that bill, charged that Margaret Hare had received several sums from her husband's estate, and that the plaintiff was chargeable with certain sums, received by him from the estate of A. Hare, which he had not accounted for. That the personal estate of A. Hare, sold for £638. 14s. 8d., as per account annexed, and that he had paid off sundry debts. The answer of George Hunter to that bill, stated, that Margaret Hare was not of a disposing mind, when she made her will; also, that

the complainant had received large sums of the estate of A. Hare, not accounted for; also, that he had received large sums of the estate of Margaret Hare. To these answers, the plaintiff filed a special replication, stating how much Margaret Hare received of her husband's estate—that he paid to A. Hare, what moneys he had received on certain cargoes committed to his care. The account of sums received by Mrs. Hare, after deducting debts paid by her, leaves a balance against her of £127, and a balance in his own favour as to the cargoes. The court, in that suit, directed Todd to pay over the assets to the plaintiff, in part satisfaction of Hunter's judgment, and reserved to the plaintiff leave to prosecute any other suit, for obtaining the value of said judgment. That on an appeal, the superior court decided that no provision for the issue of the marriage was made by the marriage contract, but in the event of A. Hare surviving his wife; and, as this did not happen, the son could have no claim under that contract, nor, of course, the trustees; that the question was to be considered as between the plaintiff and Todd; that the provision for the wife, did not destroy her paramount right under the contract, but was to be considered as a satisfaction pro tanto; that of course, the inferior court did right in making the marriage articles the basis of the decree; that the interest of Margaret Hare, under those articles was bequeathable under the general expression "property," and if not specifically bequeathed, would devolve on her representative; that the plaintiff was entitled to the whole judgment, to be settled between him and John Hare, who was not a party to the suit; that Todd having made no claim of offset, on account of the estate devised to Margaret Hare, or shown its value, the court could only decree, as it did, for the balance of assets in his hands. That in virtue of the above decree, the plaintiff received from Todd £604. 2s. 3d., the whole amount of assets in his hands—admits that Margaret Hare received of her husband's estate, £147. 4s. 10d., which will also be a credit to the judgment, if deemed proper by the court. That John Hare died in 1806, in his minority, intestate, and without issue. That Todd delivered to George Hunter, after Margaret Hare's death, sundry patents and conveyances of land, chiefly in Kentucky; and that said Hunter has received sundry evidences of debt, belonging to the estate of A. Hare. That according to the laws of Kentucky, and of the Mississippi territory, where the major part of A. Hare's lands lies, the same descended to Thomas Bryant, and others named in the bill. Prayer, that Hunter may account for all sums and evidences of debt of A. Hare, received by him, and that the other defendants, the heirs of Mr. and Mrs. Hare, may join in conveying the aforesaid lands to trustees, to apply the same to the satisfaction of the judgment on the marriage article bond, and for other re-

lief. The answers do not materially vary the case stated in the bill. The defendant, George Hunter, claims a debt due to him from A. Hare, by simple contract.

Todd, for the plaintiff, insisted, that the devise by A. Hare to Margaret Hare, is not even a satisfaction pro tanto; being given under conditions; as the debts were first to be paid. 1 P. Wms. 401; 1 Brown, Ch. 130; 2 Ves. Jr. 466; 3 Ves. 564. That the devise of this debt by Mrs. Hare, passed it to the plaintiff, and the judgment in Kentucky, as to Hunter, is conclusive. That Margaret Hare did not accept the devise of her husband, and, therefore, the plaintiff may come here to have this debt satisfied out of land.

Tilghman, for defendants.

The plaintiff is entitled only to a discovery of the real estate of John Hare, but not to relief in equity. The marriage contract is to be postponed to creditors. It is agreed, that Mrs. Hare brought no fortune to her husband, and, therefore, she is not, in equity, entitled to interest, only for one year before her husband's death; whereas, the judgment is for interest during the coverture. 1 Eq. Cas. Abr. 66. A. Hare, was bound either to settle the land in his lifetime, or to devise an equivalent by will, within a year; whereas, this will was not made within a year. The provision is for her children, as well as herself; and they would have been entitled to a provision out of the 5,000 dollars. A marriage contract, is considered as voluntary in relation to creditors at the time, though it may be otherwise, as to subsequent creditors. 9 East, 170. The devise to Mrs. Hare, is a satisfaction. The court leans against double provisions. 3 Atk. 419; 1 Ves. 1; 2 Ves. Jr. 356; 3 Ves. 430. Mrs. Hare cannot take under the will, the whole of her husband's land, except the 1,000 acres, and against the will, so as to sweep away that land. The court will marshal the assets, so as to let in the simple contract creditors.[3]

WASHINGTON, Circuit Justice. The first question is, whether the devise to Mrs. Hare, was a satisfaction or performance in whole, or in part, of the marriage contract, and was accepted? The general rule is, that a devise of land, is not a satisfaction, or part performance, of an agreement to pay money. But, in this case, A. Hare, by the marriage contract, bound himself to assure to the trustees of his intended wife, a sufficient real or personal estate, to secure the payment of 5,000 dollars for her sole use. in case

[3] As to satisfaction and the principle that a man cannot take under and against a will, see 2 Eq. Cas. Abr. 35, 36; 8 Vin. Abr. 472; 2 Vern. 581; Cas. t. Talb. 178, 182, 183; 2 Fonbl. Eq. 320; Finch, Prec. 394; 2 P. Wms. 616; 2 Vern. 478; 2 Salk. 508; 2 Atk. 300; 2 P. Wms. 555; 1 Ves. Sr. 519; 2 Atk. 491; 2 P. Wms. 616; 3 P. Wms. 245; 2 Vern. 177, 298; 2 P. Wms. 333, 617; 3 P. Wms. 227; 1 P. Wms. 408, 410; 3 Atk. 326.

she should survive him, or should, by his last will, within the said year from the date of the bond, bequeath to her such estate as should be fully adequate to the intended provision. He accordingly makes a provision for her by will, and, though not made within the year, this circumstance is immaterial; a will being ambulatory. This provision is to all intents and purposes, a performance or part performance of the contract; and, although he does not so declare in his will, yet, that he intended it, is not to be questioned; for, it is inconceivable, that he should have meant to give, as a bounty to his wife, nearly half his estate, and to have left this large debt to sweep away the provision intended for his son. The reference in the bond to a provision in land, or other property, to be made by will, differs this from all the cases that were cited; and, we must presume, that the will was intended to comply with the condition of the bond. The nuncupative will amounts to an express acceptance of the devise; as it disposes of all the property of every kind, vested in her by the will of her husband, or otherwise. This property, consisted of land and personal estate, the latter very trifling, particularly, after the plate and other things devised by her, were deducted. The court has no authority for limiting her words to the personal property; because, the will could not, in point of law, pass the real estate; a circumstance which most probably she did not know. Is this question concluded, by the decision of the question of law in the Kentucky courts? We think not. It is true, the executor of A. Hare, by his plea, put this point directly in issue; but, at law, it could not be tried; for, if the provision made by the will, amounted not to full performance, we do not see how the verdict could have been otherwise than it was. But, in equity, and especially when the plaintiff is seeking relief against the real estate, this court must decide on equitable principles.

Second question. Is the plaintiff entitled to claim, in this court, the whole amount of principal, as well as the interest which accrued during the coverture? The judgment at law, is for the whole sum; but, if it be inequitable, a court of equity will not, in granting relief to the plaintiff, allow him more than he is justly entitled to. We admit, that if the judgment would be conclusive upon the court of equity in Kentucky, it is conclusive upon this court. But, that is not the case, and the inconclusiveness of the judgment arises, not from the circumstance of the court in another state being called upon to execute that judgment, but, from the peculiar principles and rules which regulate a court of equity, which differ from those which prevail in courts of law. We shall therefore direct an inquiry, as to this subject.

Third. What relief is the plaintiff entitled to, in respect to the personal estate of A. Hare? Certainly, to the application of it to discharge the whole sum due, in aid of the real estate devised to Margaret Hare, in part performance of the marriage contract. Consequently, the defendants, the executors of A. Hare, must account for the personal estate, which has come to their hands.

Fourth. What relief is the plaintiff entitled to, against the real estate of A. Hare, in case the personal estate should not be sufficient to pay what is justly due, under the marriage contract, after deducting the value of the real estate devised to Mrs. Hare? As to the lands devised to Mrs. Hare, there is no ground for charging them in the hands of the heirs of Mrs. Hare, to make up such deficiency. It would be absurd to say, that they were liable in her own hands, and of course, they cannot be so in the hands of her heirs. We know of no principle, which will subject the real estate of the creditor, in the hands of her devisee or heir, to satisfy the representatives of the personal estate of the same creditor. As to the 1,000 acres of land devised to John Hare by his father, the plaintiff is clearly entitled to have any deficiency in the payment of his debt made up out of that estate, since, upon the opinion given on the first point, Mrs. Hare did not take the land devised to her as a bounty, but in part performance of the contract of A. Hare, under the marriage settlement. And, since it is possible that the plaintiff's claim may exhaust the whole of the personal estate, so as to deprive the defendant, Hunter, of personal assets sufficient to pay the debt due to him, the assets must be so marshalled as to apply this real fund, or so much of it as may be necessary, fully to discharge the plaintiff's debt, and to leave so much of the personal estate, as may be sufficient to pay the debt due to the defendant, Hunter.

Decree: This cause came on, &c.; whereupon the court, being of opinion that the real and personal estate devised to Mrs. Hare, by the will of A. Hare, her husband, are to be considered as made in part performance of the marriage contract, dated, &c., amongst the exhibits in this cause, according to the value of the property so devised at the time of the death of the said A. Hare; and that the plaintiff is entitled to full satisfaction of the principal sum and interest justly due, by the said contract, in case the value of the estate devised to the said Margaret Hare, by her said husband, at the time of the death of the said A. Hare, together with such sums as have, since the death of the said A. Hare, been received by the said Margaret Hare, and by the plaintiff, as her administrator, were insufficient, fully to discharge the same, out of so much of the personal estate of the said A. Hare, in the hands of the defendants, as will remain after satisfying the just claims of the defendant, George Hunter, for moneys due to him by the said A. Hare; and in case the same should be insufficient, fully to satisfy the said principal sum, and interest, due to the complainant, then, out of the

1000 acres of land, devised by the said A. Hare to his son John; it is therefore decreed and ordered, that the commissioner of this court, do state an account of the balance now due to the plaintiff, upon the above principles, and that he also state the value of the estate devised to the said Margaret Hare, by her husband, at the time of his decease, as also to allow, what to him may seem a reasonable provision for the said Margaret Hare, during her marriage, in lieu of the 300 dollars, agreed to be paid to her by the said A. Hare; and for ascertaining the value of the lands devised to the said Margaret Hare. Commissions are awarded to the parties for taking depositions to prove the same, and also, the advances made to the said Margaret Hare by her said husband; either party giving to the other —— days' notice of the time and place of executing the said commissions; and further, that the said commissioner do state an account of moneys due to the defendant, George Hunter, by the said A. Hare, stating specially such further matters as either party may require, or the said commissioner may deem material. The court reserves the question of interest to the final hearing.

[NOTE. On the accounting it appeared that a bond of one Hustin had been assigned by Hare to complainant. to facilitate its exchange by the latter as Hare's agent for a quantity of tobacco; that, pending the exchange, Hare died, and complainant, who was unable to sell the tobacco, deposited it with a person who had been the factor and correspondent of Hare in his lifetime, but what further became of the tobacco did not appear. The final decree charged one half of such bond as an offset against the bond in suit.

[On appeal from the final decree, the supreme court reversed the decree below, and held that, Mrs. Hare never having made an election to reject the provision under the will of her husband, and rest alone on her bond, complainant had the right to do so; that in demanding payment of the bond he had made such an election, and was entitled to the satisfaction demanded; that the actual maintenance of Mrs. Hare was equivalent to the payment of the sum secured by the bond for her separate maintenance. and therefore interest on the bond during her husband's life should not be computed; that in payment of the bond the personal residue should first be exhausted, and next the realty; and that the evidence to set off against the bond in suit the one-half of the Hustin bond was entirely insufficient. Hunter v. Bryant, 2 Wheat. (15 U. S.) 32.]